## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stephen Wayne Carlson,                                    Civ. No. 12-645 (JNE/JJK)

                    Plaintiff,

v.

U.S. Department of Education;                             **REPORT AND**
Minnesota Office of Higher Education;                     **RECOMMENDATION**
Governor Mark Dayton, in Official
Capacity; B. Todd Jones, U.S. Attorney,
District of Minnesota; Financial Litigation
Unit; Board of Regents of the University
of Minnesota; and Eric Kaler, in Official
Capacity;

                    Defendants.

Stephen Wayne Carlson, PO Box 2361, St. Paul, MN 55102, *pro se.*

Ana H. Voss, Esq., and Roylene A Champeaux, Esq., United States Attorney's
Office, counsel for Defendants U.S. Department of Education, B. Todd Jones,
and Financial Litigation Unit.

Sara L. Bruggeman, Esq., Minnesota Attorney General's Office, counsel for
Defendants Minnesota Office of Higher Education and Governor Mark Dayton.

Brian J. Slovutt, Esq., University of Minnesota, counsel for Defendants Board of
Regents of the University of Minnesota and Eric Kaler.

JEFFREY J. KEYES, United States Magistrate Judge

        This matter is before the Court on the following motions to dismiss:

(1) Motion to Dismiss by the Minnesota Office of Higher Education and Governor

Mark Dayton (Doc. No. 1, Attach. 6); (2) the Regents of the University of

Minnesota and Eric Kaler's Motion to Dismiss Adversary Proceeding (Doc. No. 1,

Attach. 8); and (3) B. Todd Jones, The Department of Education, and the

Financial Litigation Unit's Motion to Dismiss (Doc. No. 2).  The United States

District Court has referred these motions to this Court for a Report and

Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

that follow, this Court recommends that Defendants' motions be granted, that

Carlson's request for discharge of his student loan debt on the basis of undue

hardship be transferred to the bankruptcy court, and this action be dismissed.

## BACKGROUND

### *Prior Litigation Relevant to This Lawsuit*

The factual context for Carlson's Complaint dates back more than thirty

years.  (*See*, *e.g.*, Doc. No. 1, Attach. 1, Compl. at 1.)  In 1976 and 1978, Plaintiff

Stephen Wayne Carlson borrowed approximately $4,000 to attend the University

of Minnesota.  *See United States v. Carlson* (*Carlson I*), Civ. No. 99-1918

(PAM/JGL), Doc. No. 16 at 1 (D. Minn. June 2, 2000) (summary-judgment order

explaining genesis of Carlson's student loan debt).  In the early 1980s, Carlson

stopped attending the University and his loans entered repayment.  *Id.* at 2.

However, Carlson did not make payments on those loans.  *Id.*  And in 1999 the

United States Department of Education ("DOE"), filed an action against him

claiming that he had defaulted on the loans.  *Id.*, Doc. No. 1 (Nov. 30, 1999,

complaint filed in the collection action).

2

In that collection action, United States District Judge Paul Magnuson granted the DOE's motion for summary judgment, concluding that Carlson defaulted on his student loans. *Id.*, Doc. No. 16. In support of the DOE's motion, a loan analyst, Joan Dyer, made a declaration that inaccurately represented certain facts. *See Carlson v. United States* (*Carlson II*), Civ. No. 03-905 (RHK/JSM), 2003 WL 22959709, at *1 (D. Minn. Dec. 12, 2003) (dismissal order in subsequent suit explaining Carlson's arguments in the DOE's collection action).[1] Among the inaccuracies was Dyer's statement that Carlson was no longer in school and had defaulted on both his student loans in 1982, when, in fact, he claimed to have attended the University through 1983 or 1984. *See Carlson II*, 2003 WL 22959709, at *2. His attendance through the latter date affected the calculation of interest owed on the loans because the loans did not enter repayment until his enrollment dropped below a half-time academic load. *Id.* at *1. The DOE's counsel agreed to stipulate that Carlson attended the University through 1984 to address this discrepancy. *Id.* at *1. Thus, the DOE essentially agreed, for purpose of the litigation, that the loans did not enter repayment earlier and that it was not entitled to recover any interest allegedly accrued on the loans before 1984.

---

[1]   *Cargill II* is a suit Carlson filed subsequent to the conclusion of the collection action. In this subsequent suit, Carlson alleged that certain errors committed in the collection action persisted. The *Cargill II* decision cited in the text sets forth a clear background of the issues Carlson raised in the collection action and attempted to litigate again in *Cargill II*.

During the collection action, Carlson sought to have the summary-judgment ruling against him vacated on the basis that the Dyer declaration contained misrepresentations of fact, but Judge Magnuson denied his motions. *Carlson I*, Doc. Nos. 25 & 28.  The District Court entered final Judgment in the collection action in 2002.  *Id.*, Doc. No. 30.  Carlson was not successful on his appeal to the Eighth Circuit.  *United States v. Carlson*, No. 02-1852, 2002 WL 1784900, at *1 (8th Cir. Aug. 5, 2002) (unpublished).

In 2003, several months after the final Judgment in the collection action, Carlson sought relief from the Judgment in this Court by filing a separate action, and his case was assigned to District Judge Richard H. Kyle.  *Carlson II*, Civ. No. 03-905 (RHK/JSM), Doc. No. 1 (D. Minn. Jan. 24, 2003).[2]  In the 2003 lawsuit, Carlson again asserted that the 2002 Judgment had been obtained on the basis of errors in the Dyer declaration.  *Id.*, Doc. No. 1 at 1, 2.  In an Order dismissing Carlson's 2003 case, Judge Kyle described the errors Carlson complained of and denied Carlson's request for relief, in part, on grounds of *res judicata*.  *Carlson II*, 2003 WL 22959709, at *4.  Judge Kyle explained that Carlson had already had his day in Court, that the Court had already finally determined that Carlson owed

---

[2]    The Court takes note of these matters even though they are not mentioned in the Complaint in this case under *Porous Media Corp. v. Pall*, 186 F.3d 1077, 1079 (8th Cir. 1999) (permitting consideration on a motion to dismiss of certain matters outside of the complaint that are of public record or are necessarily embraced by the pleadings).

a debt to the DOE for his student loans, and that the errors in the Dyer

declaration did not warrant any relief.  *Id.*

      Nearly eight years after Judge Kyle dismissed Carlson's 2003 suit, Carlson

initiated an action in the United States Bankruptcy Court for the District of

Minnesota by filing a Voluntary Petition under Chapter 13 of the Bankruptcy

Code, estimating that the debts he sought to discharge ranged between $50,000

and $100,000.  *In re Carlson*, Bankr. No. 11-34420, Doc. No. 1 (Bankr. D. Minn.

July 6, 2011).  During that bankruptcy case, Plaintiff filed several adversary

proceedings, one of which is this action.  *See id.*, Doc. No. 60 (Bankr. D. Minn.

Feb. 7, 2012) (adversary proceeding).  On March 12, 2012, the Bankruptcy Court

ordered this adversary proceeding transferred to the District Court to be treated

as a civil action because the Complaint includes a jury demand and raises claims

arising under laws other than title 11 of the Bankruptcy Code.  (Doc. No. 1,

Attach. 9, Order Transferring Adversary Proceeding); *see* D. Minn. Loc. R. U.S.

Bankr. Ct. 5011-3(a) (permitting a bankruptcy judge to transfer a proceeding to

the district court under certain circumstances).

      In this transferred adversary proceeding, Carlson has sued the Board of

Regents of the University of Minnesota, the President of the University of

Minnesota, the Minnesota Office of Higher Education ("OHE"), Governor Mark

Dayton, the DOE, United States Attorney B. Todd Jones, and the Financial

Litigation Unit of the US Attorney's Office for the District of Minnesota ("FLU").

Carlson's Complaint asserts that the State of Minnesota "falsely assigned" his

student loans to the DOE, alleges that the Dyer declaration amounted to a fraud on the Court, describes a lengthy history of his financial difficulties, recounts troubles he has had in finding sustained employment over the years, and explains how he no longer has the opportunity to attend classes at the University. (Compl., *passim*.)  Based on these allegations, Carlson claims that the Defendants have violated his constitutional rights under both the Constitution of the United States of America and the Constitution of the State of Minnesota.  (*Id.* at 4, 7, 8, 10.)  He seeks to have his student loan debt discharged (claiming that the obligation to repay those loans subjects him to undue hardship within the meaning of 11 U.S.C. § 523(a)(8)(B)) injunctive relief, and monetary damages. (*Id.* at 2–4.)   Each of the Defendants has asked for dismissal of some portion or all of Carlson's claims against it.  Carlson's allegations pertaining to each Defendant are summarized below.

### Defendants Minnesota Office of Higher Education and Governor Mark Dayton

Carlson's allegations directed against the OHE and Governor Mark Dayton are not entirely clear.  He asserts that the OHE assigned Carlson's student loans to the United States in 1982.  (Compl. at 2.)  He calls this transfer a "false assignment," but does not explain what that term means or identify what brought it about.  (*Id.*; *see also id.* at 11.)  He further alleges that the OHE "is the current name of the Minnesota agency lawfully responsible for administering the federal student loans in Minnesota."  (*Id.* at 4–5.)

6

Carlson alleges that he brought issues concerning his student loans to Governor Mark Dayton's attention when Dayton was a United States Senator. (*Id.* at 5.)  According to the Complaint, then-Senator Dayton contacted the DOE about Carlson's student loans at which point "the wrongdoing of [the DOE] was explained clearly to his staff."  (*Id.* at 5.)  Carlson does not describe what this alleged "wrongdoing" involved or make any other allegations against Governor Dayton or the OHE in the Complaint.

### Defendants Board of Regents of the University of Minnesota and Eric Kaler, President of the University of Minnesota

Carlson claims that the Board of Regents of the University of Minnesota "is the proper party to be sued for wrongful actions of the officers of the University of Minnesota, and for the violations by those officers of federal laws, federal constitutional rights in the University's handling Carlson's student loans, work study and grants."  (Compl. at 5.)  Carlson asserts that he was a student at the University of Minnesota during the early 1980s.  (*Id.* at 10, 14.)  He alleges that he was "regularly elected to office" during his time as a student, but that "[v]iolations of political speech [were] involved in removing [him] to silence his participation in the governance of the University through the offices [he] was elected to."  (*Id.* at 4 n.4, 10.)  Apparently, these "violations" occurred when University officials "made false claims to the federal government that at some point nine months before November 1980, Carlson was no longer in school."  (*Id.* at 9.)  Carlson appears to be referring to the allegations in the Dyer

declaration discussed above.  *See supra*, discussion at p.3.  Carlson asserts that University officials knew he was enrolled at the University at that time and their "false claims" "violate[d] federal criminal statutes," and Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.  (*Id.* at 10.)  He claims that these University officials' actions cut off his access to "federal student assistance and to higher education academic programs and degrees at the University of Minnesota." (*Id.* at 1.)  He also appears to assert that this series of events led to an "abusive collection process" relating to his student loans.  (*See id.* at 7.)

Carlson next describes several jobs he held at the University over the years, but ultimately he claims that the University has "cut off any job [he] could get." (Compl. at 14.)  For example, he asserts that he had jobs "teaching jazz and organizing language-learning programs" while at the University of Minnesota. (*Id.*)  He claims to have excelled in work for the University as a custodian and to have been employed in the mortuary science and anatomy lab.  (*Id.* at 14–15.)  However, it appears that his employment with the University did not continue and he claims that he was forced to take outdoor canvassing jobs in the winter from political organizations because the only work he could get at the University was janitorial.  (*Id.* at 15.)  He also claims that, at some point, he was "brought in front of a supervisor named Dorothy Jackson and assaulted by a man who claimed to be a boxer and who taped his hands while he flailed in front of [Carlson's] face, while the supervisor said 'I didn't see a thing.'" (*Id.*)  When he attempted to "try to

work this out with the University and the police," he asserts that he was fired.

(*Id.*)

The Complaint does not include any allegations mentioning conduct engaged in by Defendant Eric Kaler, the President of the University of Minnesota.

### B. Todd Jones, the United States Department of Education, and the Financial Litigation Unit of the United States Attorney's Office for the District of Minnesota

In his Complaint, Carlson asserts that the DOE, the FLU, and B. Todd Jones committed a fraud on the Court when the DOE obtained the 2002 Judgment in the collection action presided over by Judge Magnuson. (Compl. at 9, 17.)  Specifically, he alleges that these Defendants initiated the collection action against him by falsely claiming to the Court that Carlson was not enrolled as a student as early as 1980 and that his loans, therefore, had come due in 1980; in fact, Carlson asserts he had been a student until 1983 or 1984. (*Id.* at 9.)  Carlson also asserts that B. Todd Jones admitted to fraud when the FLU stipulated that Carlson was a part-time student until 1984.  (*Id.*)

### Defendants' Motions to Dismiss

In their motions to dismiss, Defendants raise several alternative grounds for dismissal.  Defendants Governor Mark Dayton and the OHE argue that the Court lacks subject-matter jurisdiction based on sovereign immunity under the Eleventh Amendment and that, even if the Court did have jurisdiction, Carlson has failed to state a claim against either of them.  (Doc. No. 1, Attach. 6.) Defendants the Board of Regents of the University of Minnesota and Eric Kaler

raise these same arguments.  (Doc. No. 1, Attach. 8.)  All of these Defendants

request that the Court dismiss all claims Carlson asserts against them.  (Doc. No.

1, Attach. 6; Doc. No. 1, Attach. 8.)

Defendants B. Todd Jones, the FLU, and the DOE argue that Carlson's

constitutional claims against them are barred by the doctrine of res judicata and

that Carlson has failed to state any claim against them.  They also argue that the

claims against B. Todd Jones are barred by the doctrine of sovereign immunity.

(Doc. No. 3.)  The DOE has also filed an Answer in this matter responding only to

Carlson's allegations that he cannot repay his student loans without suffering

undue hardship; the DOE does not argue that Carlson's request to discharge that

student loan debt in bankruptcy should be dismissed.  (*Id.*)  At oral argument, this

Court asked Carlson and the DOE to file supplemental memoranda explaining

their positions on how the case should proceed if all Carlson's constitutional

claims are dismissed and the only aspect of this case left for resolution is

Carlson's request for discharge of his student loan debt.

**DISCUSSION**

I.   **SUBJECT MATTER JURISDICTION**

A.   **Legal Standard**

Several Defendants have asserted that Carlson's claims must be

dismissed for lack of subject-matter jurisdiction based on the doctrine of

sovereign immunity.  Such a motion under Rule 12(b)(1) of the Federal Rules of

Civil Procedure presents a facial challenge, such that all of the factual allegations

10

in the complaint concerning subject-matter jurisdiction are presumed to be true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The non-moving party receives the same protections and presumptions of fact as it would under a motion to dismiss for failure to state a claim in this type of challenge. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

The Eleventh Amendment prevents suits against state governments brought in federal court, except when Congress has abrogated that immunity for a particular cause of action, *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999), or when a state has clearly and expressly waived its immunity. *Edelman v. Jordan*, 415 U.S. 651, 673 (1971). This sovereign immunity also bars suits against state instrumentalities and entities, *Becker*, 191 F.3d at 908, and state officials sued in their official capacities. *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 72–74 (2000); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that a "suit against a state official in his or her official capacity" is "no different from a suit against the State itself").

The United States, like State governments, possesses sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006) ("Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity."). This immunity can be waived, but the waiver must be clear and unmistakable. *United*

11

*States v. Mitchell*, 445 U.S. 535, 538 (1980).  Courts narrowly construe such

waivers.  *United States v. Sherwood*, 312 U.S. 584, 587–88 (1941).

Issues of sovereign immunity concern this Court's subject-matter

jurisdiction, which must be addressed before reaching the merits of Carlson's

claims.  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991) (noting that

subject-matter jurisdiction is a threshold requirement); *Taylor v. Rice*, Civ. No.

10-4746 (SRN/JJG), 2012 WL 246014, at *3 (D. Minn. Jan. 6, 2012) (noting that

sovereign immunity is jurisdictional in nature).

### B.     Carlson's Claims Against the OHE, the University of Minnesota, the University's President Eric Kaler and Governor Mark Dayton

This Court concludes that Carlson's claims against Defendants the OHE,

Governor Dayton, the Board of Regents of the University of Minnesota, and the

University's President Eric Kaler (collectively the "Minnesota Defendants") should

be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction

because the Minnesota Defendants enjoy sovereign immunity.

Carlson's Complaint appears to reference several purported constitutional

and statutory violations committed by all the Minnesota Defendants, although it

does not tie any particular Defendant's actions to any constitutional provision.

The legal bases on which he seeks recovery against the Minnesota Defendants

are not entirely clear in the Complaint.  He does, however, plainly request that he

be awarded "monetary damages for the claims filed falsely by the State of

Minnesota," compensation for a loss of income, and punitive damages, as well as injunctive relief.  (Compl. at 3, 4.)

Carlson's claims against the OHE and the University are claims against departments or instrumentalities of the State of Minnesota.  The OHE is a state department created under Minn. Stat. § 136A.01.  The University is an instrumentality of the State as well.  *Raygor v. Univ. of Minn.*, 534 U.S. 533, 538–39 (2002); *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818–19 (8th Cir. 1996).  As agencies or departments of the State of Minnesota, the University and the OHE are entitled to sovereign immunity from Carlson's claims.  *Becker*, 191 F.3d at 908.  "This jurisdictional bar applies regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984), so that the University and the OHE are entitled to sovereign immunity on Carlson's claims for damages and injunctive relief.  As a result, the claims against the OHE and the University should be dismissed for lack of subject-matter jurisdiction.

Carlson has made it clear that he is suing University of Minnesota President Eric Kaler in his official capacity.  (Compl. at 1 (stating expressly in the caption of his Complaint that President Kaler is named in his official capacity).)  He has not, however, indicated whether he is suing Governor Dayton in his official or individual capacity, and, as a result, his claims against Governor Dayton can only properly be construed as official-capacity claims.  *See Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we

13

interpret the complaint as including only official-capacity claims.").  A suit against state officials in their official capacities is barred by sovereign immunity regardless of whether it seeks damages or injunctive relief.  *Pennhurst*, 465 U.S. at 101.  Therefore, Carlson's claims against Governor Dayton and President Kaler are also barred by sovereign immunity and should be dismissed for lack of subject-matter jurisdiction.

Carlson argues that Minnesota has waived its sovereign immunity by assigning loans to the federal government, placing financial holds on his transcript, denying him access to financial aid, making "false claims" to the United States, and by filing a claim in the bankruptcy matter to collect debts. Essentially, Carlson's argument suggests that he believes the Minnesota Defendants waived sovereign immunity by the alleged wrongdoing for which he has sued them.  Carlson provides no support for such a proposition that this type of alleged conduct constitutes a waiver of sovereign immunity, and this Court has located none.

Further, in his Complaint, Carlson cites 42 U.S.C. § 1983 as the source of his constitutional claims against the Minnesota Defendants.  (Compl. at 4; *id.* at 23 (Adversary Proceeding Cover Sheet including 42 U.S.C. § 1983 in the "Cause of Action" field).)   But "Minnesota has not waived its sovereign immunity with respect to claims arising under § 1983, such as the due process and First Amendment claims [Carlson] brings here."  *See McCormack*, No. 10-4135, 2011

WL 753861, at *3 (D. Minn. Feb. 24, 2011).  Accordingly, Carlson's § 1983

claims should be dismissed for lack of subject matter-jurisdiction.

Carlson also argues that Congress has abrogated Minnesota's sovereign

immunity under 11 U.S.C. § 106.  (Compl. at 1 (stating that "[t]he State of

Minnesota and Congress have waived and abrogated Minnesota's and the

United States' sovereign immunity under 11 U.S.C. §§ 106(a), (b) and (c)").)

Carlson misconstrues the meaning and application of 11 U.S.C. § 106.  For

example, section 106(a) applies only where the claims being asserted against

the governmental unit involve issues arising with respect to a specific list of

Bankruptcy Code provisions.  *See* 11 U.S.C. § 106(a)(1) (noting that sovereign

immunity is abrogated as to a governmental unit with respect to fifty-nine

separate provisions of the Bankruptcy Code).  Carlson's claims against the

Minnesota Defendants are for alleged violations of his constitutional rights.  He

has commingled his discussion of those violations in his Complaint with the facts

he apparently believes are relevant to his discharge claim and a showing of

undue hardship under 11 U.S.C. § 523(a)(8)(B).  This commingling of allegations

does not, however, change the fact that Carlson's factual allegations of

unconstitutional conduct are simply unrelated to any of the listed provisions in the

Bankruptcy Code.

Section 106(b) does not apply either.  That provision provides that a

governmental unit that has filed a "proof of claim" in a bankruptcy action waives

its sovereign immunity with respect to a debtor's claim against that governmental

unit that is property of the bankruptcy estate and that "arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."  11 U.S.C. § 106(b); *see also In re Mehrhoff*, 88 B.R. 922, 924–25 (Bankr. S.D. Iowa 1988) (noting that § 106(b) only reaches as far as a compulsory counterclaim on a proof of claim submitted by the governmental unit), *overruled on other grounds by In re Mehrhoff*, Civ. No. 88-1488-A, Bankr. No. 87-1150-C, 1989 WL 1681505 (S.D. Iowa Mar. 21, 1989).  Carlson does not identify which of the Minnesota Defendants, if any, has even filed a "proof of claim" in his bankruptcy action.  This Court takes judicial notice that there have been twenty-one separate claims filed in Carlson's bankruptcy action.  *In re Carlson*, Bankr. No. 11-34420, Claims Register (Bankr. D. Minn. 2012) (listing twenty-one separate claims totaling $161,619.84).  These creditors include the United States Department of the Treasury and the State of Minnesota Department of Revenue, whose claims are for taxes or penalties owed to governmental units and bear no relationship to Carlson's student loan debt.  *Id.*, Claim 11-2 (IRS amended proof of claim); *id.*, Claim 17-1 (State of Minnesota Dep't of Revenue Claim).  Nor does any other proof of claim filed in Carlson's bankruptcy appear to relate to his student loans.  Moreover, there is no evidence before this Court that any proof of claim potentially related to the repayment of Carlson's student loan debt arose out the same transaction or occurrence as Carlson's allegations that the Minnesota Defendants violated his constitutional rights over a thirty-year period beginning *after* he took out those loans.  Nothing

16

in Carlson's Complaint, for instance, suggests that a constitutional violation occurred based on those facts that led to his decision to enter into the student loan agreement.  For these reasons, § 106(b) is inapposite.

And section 106(c) concerns the offset for a claim that is property of the estate against any claim or interest of a governmental unit.  Carlson does not coherently explain how this provision might be applicable to this case, and no application is readily apparent to this Court.  For these reasons, this Court concludes that none of the Minnesota Defendants have waived their sovereign immunity.  Thus, all of the claims Carlson has asserted against the Minnesota Defendants are barred by sovereign immunity and, accordingly, those claims should be dismissed for lack of subject-matter jurisdiction.

### C.    Carlson's Claims Against the DOE, the FLU, and B. Todd Jones

As with his claims against the Minnesota Defendants, Carlson seeks damages for constitutional violations allegedly committed by the DOE and the FLU, as well as injunctive relief.  (*See* Compl. at 3–4.)  However, just as Carlson's claims against the Minnesota Defendants should be dismissed for lack of subject-matter jurisdiction, his claims for monetary damages against the DOE, and the FLU should be dismissed for lack of subject-matter jurisdiction on grounds of sovereign immunity.

Because Carlson's constitutional claims against the DOE and the FLU seek damages from agencies of the United States Government, sovereign immunity applies unless there has been a clear waiver of that immunity.  *FDIC v.*

17

*Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government *and its agencies* from suit.") (emphasis added); *see also Najbar v. United States*, 649 F.3d 868, 870 (8th Cir. 2011) (stating that as an independent establishment of the executive branch of the Government, the United States Postal Service enjoyed federal sovereign immunity absent a waiver).  Carlson has not identified any clear and unmistakable waiver of that immunity by the United States.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Carlson again argues that 11 U.S.C. § 106(a), (b), and (c) constitute such a waiver, but these provisions are equally inapplicable to the United States Government as they are to the Minnesota Defendants for the reasons outlined above.  Accordingly, this Court recommends that Carlson's claims against the DOE and the FLU for money damages be dismissed for lack of subject-matter jurisdiction.

To the extent Carlson has requested injunctive relief against the DOE and the FLU, this Court notes that Congress has waived sovereign immunity with respect to suits against the United States that involve requests for prospective injunctive relief.  *See Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003) (explaining that the United States did not enjoy immunity from federal inmates's injunctive-relief actions because section 702 of the Administrative Procedure Act ("APA") expressly waives sovereign immunity as to any action for nonmonetary relief brought against the United States); *Taylor v. Rice*, Civ. No. 10-4746 (SRN/JJG), 2012 WL 246014, at \*5–6 (D. Minn. Jan. 6, 2012) (explaining that section 702 of

the APA waives sovereign immunity for all suits claiming that an agency or federal officer acted or failed to act in an official capacity).  The same analysis applies to any claim for injunctive relief Carlson intends to assert against Defendant B. Todd Jones concerning actions taken in his official capacity.  *See Taylor*, 2012 WL 246014, at *5–6 (noting that the waiver of sovereign immunity found in section 702 of the APA permits injunctive-relief suits to go forward against federal officials in their official capacities).  Accordingly, this Court does not recommend that any of Carlson's claims against the DOE, the FLU, and B. Todd Jones (collectively the "Federal Defendants") for injunctive relief be dismissed on grounds of sovereign immunity.

Further, with respect to Defendant B. Todd Jones, this Court notes that in his Complaint Carlson has cited *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), which permits a plaintiff to bring an action for damages for alleged constitutional violations against a federal employee in his individual capacity.  Because B. Todd Jones is the only federal employee identified by name as a Defendant in this action, this Court presumes Carlson referred to *Bivens* as the basis for his money damages claims against Jones. Defendants argue that because Carlson has not specifically identified whether he is suing Jones in his individual or official capacity, the suit must be presumed to be asserted against Jones in his official capacity.  (Doc. No. 3, Fed. Defs.' Mem. 7 (citing *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)).) However, the case Defendants rely on for this proposition, *Egerdahl*, relates to

19

the sovereign immunity of states under the Eleventh Amendment, not federal officials sued under *Bivens*. *See Hill v. Holinka*, Civ. No. 06-4720 (PJS/JJG), 2008 WL 549928, at *1 (D. Minn. Feb. 27, 2008) (distinguishing official-capacity presumption in claims against a state and claims against a federal official under *Bivens*).  This Court agrees with Magistrate Judge Jeanne J. Graham's analysis in *Hill* that the official-capacity presumption applicable to claims against state officials cannot apply to a *Bivens* claim against a federal official.  *Id.* at *2–3. Specifically, Magistrate Judge Graham explained that, while a claim against a state official may be asserted as an official-capacity claim or an individual-capacity claim, a *Bivens* claim does not involve any official-capacity recovery.  *Id.* at *2.  Thus, "it makes no sense to require a plaintiff to specify whether a *Bivens* claim is proceeding against a government employee in an official or individual capacity."  *Id.*  Accordingly, this Court recommends that Defendant B. Todd Jones's challenge to subject-matter jurisdiction be rejected, and concludes that the *Bivens* claim against Jones falls within federal-question jurisdiction.

Based on the foregoing, this Court concludes that the damages claims against the DOE and the FLU are barred by sovereign immunity and recommends that they be dismissed for lack of subject-matter jurisdiction. However, this Court also concludes that sovereign immunity does not bar Carlson's damages claim against Defendant B. Todd Jones brought under *Bivens*, nor does sovereign immunity bar any of Carlson's claims for injunctive

relief against the DOE and the FLU.  Therefore, this Court must consider these Defendants' alternative arguments for dismissal.

## II.     FAILURE TO STATE A CLAIM AND RES JUDICATA

### A.     Legal Standard

The Federal Defendants have asserted that Carlson's constitutional claims must be dismissed for failure to state a claim and on grounds of res judicata.  In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 1964–65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 1965.

An affirmative defense such as res judicata may also form the basis of a Rule 12(b)(6) motion for failure to state a claim.  *Baratto v. Citizens Auto. Fin.,*

*Inc.*, No. 11-105, 2011 WL 3678676, at *2 (D. Minn. Aug. 1, 2011).  "'[T]he facts that establish the defense must be definitively ascertainable from the allegations in the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice.'"  *Id.* (quoting *Rabo Agrifinance, Inc. v. Wachovia Capital Fin. Corp.*, No. 10-983, 2011 WL 601157, at *2 (D. Minn. Feb. 11, 2011) (quoting *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003))).  A judgment on the merits in a prior suit serves as a res judicata bar to a second lawsuit when the judgment in the earlier lawsuit was rendered by a court of competent jurisdiction, the decision was a final judgment on the merits, and the same cause of action and the same parties or their privies were involved in both cases.  *Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir. 2002); *DeLlano v. Berglund*, 183 F.3d 780, 781 (8th Cir. 1999).  Res judicata precludes re-litigation of a claim on grounds that were raised or could have been raised in the prior action.  *Banks v. Int'l Union Elec., Elec., Technical, Salaried & Machine Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004).

This Court concludes that the doctrine of res judicata bars Carlson's claims.  Carlson has failed to state a claim against the Federal Defendants and against Defendant Jones for monetary damages.   The gist of Carlson's Complaint is an attempt to relitigate the propriety of the collection action presided over by Judge Magnuson in 1999.   Carlson complains that the Federal Defendants committed a fraud on the Court as a result of misrepresentations in the Dyer Declaration, and that this led to the improper conclusion that Carlson

owed the DOE a debt for his two student loans.  Carlson argues, for example, that Judge Magnuson's summary-judgment ruling was "highly improper" and refers to the decision as an "atrocious ruling."  (Doc. No. 15, Pl.'s Mem. of Law in Resp. to Mot. to Dismiss ("Pl.'s Mem.") 3 n.6; *id.* at 13 n.12.)  His allegations all relate to matters that have been previously litigated and decided against Carlson on the merits by a court of competent jurisdiction involving the same parties or their privies.  *See Carlson I*, Civ. No. 99-1918 (PAM/JGL), Doc. No. 16 (summary-judgment order); *Carlson II*, 2003 WL 22959709, at *4 (explaining that Carlson has already had his day in court concerning these very same allegations).  Because Carlson bases his claims against the Federal Defendants on matters that have already been decided on the merits, his clams are barred by the doctrine of res judicata and he has failed to state a claim for relief, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).  *See Baratto*, 2011 WL 3678676, at *2 (noting that res judicata can form the basis for a dismissal under Rule 12(b)(6)).

The remainder of Carlson's Complaint is replete with conclusory allegations that his constitutional rights were violated; he does not describe the conduct of any individual government official that he claims resulted in a constitutional violation.  His conclusory allegations are insufficient to survive a motion to dismiss for failure to state a claim on which relief can be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (noting that the conclusory nature of the plaintiff's allegations "disentitles them to the presumption of truth").

Therefore, this Court concludes that, to the extent any of Carlson's claims against the Federal Defendants are not barred by res judicata, they fail to state a claim upon which relief can be granted and should be dismissed.

## III.    REFERENCE TO BANKRUPTCY COURT

"By Order of July 27, 1984, the District of Minnesota referred 'all bankruptcy cases and related proceedings to the Bankruptcy Judges for the District of Minnesota.'" *Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 859 (D. Minn. 2011) (quoting *In re Edward Pirsig Farms, Inc.*, 47 B.R. 376, 377 (D. Minn. 1984)).  As a result, bankruptcy matters in this District are automatically referred to the bankruptcy court.  This procedure stems from 28 U.S.C. § 157. Section 157 governs the circumstances when district courts refer a case to the bankruptcy courts and when withdrawal of that reference is mandatory or permissive.  For example, subsection (c)(1) allows a district court to refer and a bankruptcy court to hear non-core proceedings—i.e., proceedings that involve something other substantive rights provided only in the Bankruptcy Code or that could arise outside the context of a bankruptcy case, *see In re Kentile Floors, Inc.*, No. 92B46466, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) (describing "core" proceedings).  But subsection (c)(1) limits the bankruptcy court's authority in such referred non-core proceedings to making proposed findings of fact and conclusions of law.  Subsection (d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C.

§ 157(d).  And subsection (e) provides that bankruptcy courts may only hear matters in which a right to trial by jury exists where the district court makes a special designation of jurisdiction and with the express consent of all the parties. 28 U.S.C. § 157(e).

Local Rule 5011-3(a) of the United States Bankruptcy Court for the District of Minnesota mirrors these provisions.  This case came to the District Court by operation of Rule 5011-3(a) when Bankruptcy Judge Dennis O'Brien entered an Order Transferring Adversary Proceeding, which explained that the Complaint asserted non-core claims and a demand for a jury trial.  (Doc. No. 1, Attach. 9.) This Court has now recommended that all of the non-core claims Carlson asserted in this adversary proceeding be dismissed.  If that recommendation is adopted by the District Court, all that will remain of this action is a core claim to determine whether Carlson may discharge his student loan debt due to "undue hardship."  This type of claim would ordinarily fall directly within the bankruptcy court's bailiwick as a claim "arising under Title 11," and which "[b]ankruptcy judges may hear and enter final judgments."  *Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011).

At the hearing on Defendants' motions to dismiss the non-core claims, this Court ordered both Carlson and the DOE to submit post-hearing memoranda on the following issue:

> [W]hether, and on what authority, the portion of this case relating to Plaintiff's assertions of undue hardship should be transferred back to the United States Bankruptcy Court for the

District of Minnesota if all of Plaintiff's non-core claims are
dismissed.

(Doc. No. 21.)  The parties have submitted their memoranda on these issues.

The DOE and the FLU argue that the matter should be transferred back to the

bankruptcy court because there is no right to a jury trial for an undue hardship

proceeding.  (Doc. No. 23, Supp. Mem. of the Def. United States of America

Regarding Transfer of Case to U.S. Bankr. Court ("U.S. Supp. Mem.") 2.)  In his

supplemental response, Carlson cited the somewhat odd procedural approach

taken by the DOE (the DOE filed a motion to dismiss all the non-core claims and

separately filed an Answer concerning only the "undue hardship" claim) (Doc. No.

24, Pl.'s Supp. Mem. in Resp. to Mot. to Dismiss ("Pl.'s Supp. Mem.") 1–4 & n.4),

and he appears to argue that he should still have a jury trial in this case even if

all the non-core claims are dismissed.  (*Id.* at 12–16 (suggesting that because

the decisions in his earlier litigation in this District and the wrongdoing he has

asserted against all the Defendants in his Complaint are both intertwined with his

undue hardship claim he is entitled to a jury trial).

This Court agrees with the DOE that this matter should be referred back to

the bankruptcy court for resolution of the issue of whether Carlson's student loan

debt is dischargeable because of undue hardship.  Although the Federal Rules of

Civil Procedure do not expressly permit a litigant to file a partial answer,[3] as the

DOE did, the fact that the DOE filed such a responsive pleading is irrelevant to

determining what is the best venue to consider Carlson's claim of undue

hardship.  And Carlson's perception that the issue of undue hardship is

intertwined both with his prior litigation in this District and the alleged wrongdoing

does not necessarily mean that his case should remain here.  In any event, the

DOE has now indicated that it intends to dispute whether Carlson is entitled to a

discharge of his student loan debt, and this Court should consider the most

efficient approach to that dispute's resolution.  If the District Court adopts this

Report and Recommendation, there will no longer be any non-core issues left in

this case, and, as a result, the primary basis for this action appearing on this

Court's docket in the first instance will no longer exist.[4]  All that will be left is a

---

[3]  *See Becker v. Fitzgerald*, No. 94 C 7646, 1995 WL 215143, at *2 (N.D. Ill. Apr. 10, 1995) (commenting that "[t]he procedure defendant . . . used—interposing an answer to part of a complaint and making a Rule 12 motion directed to another part of the complaint—is nowhere to be found in the Federal Rules of Civil Procedure"); *Rawson v. Royal Maccabees Life Ins. Co.*, No. 93 C 6866, 1994 WL 9638, at *2 (N.D. Ill. Jan. 11, 1994) ("The Federal Rules of Civil Procedure, however, do not contain any provision allowing for partial answers of the sort defendant has filed."); Michael D. Moberly & Andrea G. Lisenbee, *To Plead or Not to Plead?: Assessing the Effect of a Partial Motion to Dismiss on the Duty to Answer*, 13 Suffolk J. Trial & App. Advoc. 45, 91 (2008).

[4]  Furthermore, the DOE is correct that Carlson has no right to a trial by jury to determine whether he can show undue hardship.  *In re McLaren*, 3 F.3d 958, 960–61 (6th Cir. 1993) (citing *In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991)).

core bankruptcy issue in which a court must consider Carlson's past, present, and reasonably reliable future financial resources, his reasonable and necessary living expenses, and any other relevant facts and circumstances. *See Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009) (noting that the totality of the circumstances test, which considers the debtor's ability to maintain a minimal standard of living and cover payment of student loan debt given reasonable future financial resources, is used to determine whether the debt should be discharged for undue hardship). In this Court's opinion, such a determination should be committed to the bankruptcy court's expertise.

The bankruptcy court has unique knowledge of Title 11 and familiarity with Carlson's bankruptcy proceedings in general. Having the bankruptcy court consider the undue hardship claim will promote judicial efficiency and economy. Keeping this action here "would result in this court losing the benefit of the bankruptcy court's experience in both the law and facts, resulting in an inefficient allocation of judicial resources." *Cf. In re The Mortgage Store, Inc.*, 464 B.R. 421, 429 (D. Haw. 2011) (denying a party's motion to withdraw reference to bankruptcy court under permissive withdrawal considerations). For these reasons, this Court recommends that Carlson's claim to discharge his student loan debt for undue hardship be transferred back to the bankruptcy court for resolution in that forum.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      Motion to Dismiss by Minnesota Office of Higher Education and Governor Mark Dayton (Doc. No. 1, Attach. 6), be **GRANTED**;

2.      The Regents of the University of Minnesota and Eric Kaler's Motion to Dismiss Adversary Proceeding (Doc. No. 1, Attach. 8), be **GRANTED**;

3.      B. Todd Jones, the Department of Education, and the Financial Litigation Unit's Motion to Dismiss (Doc. No. 2), be **GRANTED**;

4.      Plaintiff's claim for discharge of his student loan debt on grounds of undue hardship be transferred back to the bankruptcy court for resolution; and

5.      This action be **DISMISSED**.


Date: August 9, 2012                    *s/ Jeffrey J. Keyes*_____
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 23, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made

to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.